HENRY Y. HOOPER and ROBERT E. BYRNE, partners trading as HOOPER BYRNE COMPANY, complainants-respondents,

*v.*

WILLIAM P. LAYTHAM & SONS COMPANY, INCORPORATED, defendant-appellant.

[Argued February 7th, 1938.   Decided May 11th, 1938.]

*Messrs. Koehler, Augenblick & Freedman* (*Mr. Bernard Freedman*), for the complainants-respondents.

*Messrs. Minturn & Weinberger* (*Mr. Harry H. Weinberger*), for the defendant-appellant.

The opinion of the court was delivered by

CASE, J.

The bill of complaint alleged that the defendant, a foundryman engaged in the business of casting iron and iron products, entered into an agreement with the complainants whereunder the latter procured customers for, and effected sales of, defendant's products and became entitled to commissions thereon, the true amount of which might not be ascertained without an audit of defendant's books; that defendant had

refused to pay the earned commissions or to render an account thereof or to permit an audit of the defendant's books, wherefore complainants prayed a discovery, an accounting, an audit and a decree for the payment of such moneys as should appear to be due. Defendant answered alleging fraud, and by counter-claim sought discovery of the business done by the complainants and by Roselle Foundry Company, a corporation formed by complainants, to which, it was said, defendants' business had been fraudulently diverted, and an affirmative decree for defendant was asked on that account. When the matter came on to hearing Vice-Chancellor Bigelow found that there was a contract, that complainants had rendered services compensable thereunder and that no defense had been proved. A decree was then entered dismissing the counter-claim and making reference to a master to ascertain and report the amount of commissions payable to complainants on the business accepted by the defendant from the date of the contract to the date of the order. On the incoming of the report and the hearing of exceptions thereto a decree was entered determining that there was due from defendant to complainants for commissions, with interest thereon, $18,024.24 as of July 21st, 1936, and that defendant should pay to complainants a counsel fee of $6,500, to the master an allowance of $2,500 and to other persons certain enumerated charges. Defendant appeals.

The first point raised is that the alleged contract is unilateral, lacks mutuality and was without consideration, and that therefore it is not a legal contract. The paper writing relied upon by complainants to show the terms of the contract was in form a letter written by defendant to complainants. An adequate understanding of the argument may be had without reproducing the entire writing. In part it said:

"We will pay to you a commission of five percent (5%) of all business received in the past and future from your customers. The acceptance by us of an order from, or payment of commission to you on any business received from any customer, is proof that such customer was and is yours and we will pay to you this commission on

all business received from such customers and we agree that no other commission representative, agent, broker or factor has or shall have the right to sell any of our products to any of your customers or prospective customers. * * * You are authorized to solicit business from any prospective customer that is not already an active customer of ours. We agree to pay to you a commission of five per cent (5%) on any business received from prospective customers that you have been soliciting. It is agreed that all accounts that you get prices from us for, or have us quote direct, or have us visit with any of your representatives, or write us that you are soliciting, shall be reserved as your prospective customers. We will reserve any or all of your prospective customers for a minimum of six (6) months from the time you last contact any prospective customer and thereafter, upon first giving you ninety (90) days notice in writing, we are privileged to withdraw such prospective customer provided you have not, during this ninety (90) day period, been successful in getting an order from such prospective customer."

Complainants, in reliance upon the promise therein contained, procured customers to whom defendant catered and produced orders which defendant accepted and filled. Upon those completed transactions complainants sought and were allowed commissions in accordance with the letter of authority. By any standard of fair dealing defendant's letter was at least an offer. Before the offer was withdrawn complainants accepted it to the extent of the business obtained. Plainly, acceptance was to be by performance. A sufficiently analogous state of facts, with the pertinent rule, is to be found in *Atlantic Pebble Co., Ltd.,* v. *Lehigh Valley Railroad Co., 89 N. J. Law 336,* wherein (at *p. 342*), it is said:

"We do think, however, that the promise of free storage as here made was an offer on the part of the respondent which contemplated acceptance, so far as the sending of the pebbles to Philadelphia was concerned, by performance on the part of the appellant, and that there was such performance. The promise was, 'if you will ship a cargo of pebbles to Philadelphia, and reship them exclusively over our lines as sold, we will furnish you free storage.' As above stated, the appellant did not undertake to ship any pebbles to Philadelphia, but if it did do so in pursuance of that offer, while that offer remained open for acceptance by performance, there was an acceptance of the offer by performance, which,

if a benefit to the promisor or a detriment to the promisee, completed a binding contract. The broad doctrine upon this point may be stated to be that the executed consideration for a promise is sufficient, if, induced by the request expressed by, or properly implied from, the promise, it be a benefit to the promisor or a detriment to the promisee."

We conclude that the letter from defendant to the complainants was an offer which contemplated acceptance by performance, that there was such performance before revocation, that the performance was induced by the promise and that the performance was a benefit to the promisor. It follows that there was a lawful contract binding upon the defendant to the extent of the recovery.

It is next said that if a contract existed the complainants breached it and disentitled themselves to any benefits therefrom; and this is elaborated by the contention that complainants were agents of the defendant company, that as such they were obliged to act exclusively as sellers for the defendant, that they breached that duty by acting for competing foundries and by themselves conducting an identical business, and that these breaches—denominated a fraud by the defendant—disqualified the complainants from gathering the fruits of their labor. That argument is premised upon an assumed factual basis which does not exist. Chancery determined that complainants were not employes of the defendant, either as agents or otherwise, but were independent contractors lawfully acting, with defendant's foreknowledge and concurrent knowledge, for other foundries with which defendant was in some degree of competition; and that the formation by complainants of Roselle Foundry Company resulted in no diversion of defendant's business and was not the cause of the break between the parties. We consider that the proofs lead directly to those conclusions and that with the facts found to be thus the point falls.

Defendant presents as its third point that it terminated the contract on November 2d, 1934, by the writing of a letter of cancellation which, so the brief says, the defendant sent the complainants. We have been unable to find such a

letter or a reference to it in the transcript and respondents insist that it is not there. But, if we assume that appellant did, on that or some other date, undertake to cancel the contract, it nevertheless could not cancel its obligation to pay, at the contractual rate, for services theretofore rendered. The amounts decreed to be due are for transactions actually consummated—commissions upon orders received, accepted and filled.

Objection is made to the fee of $6,500 allowed to complainants' counsel and of $2,500 allowed to the master. We consider that under the circumstances of the case the allowances are excessive. The goal of the proceeding was a money decree, and the decree is for the payment of $18,024.24. Doubtless a considerable amount of time was devoted to the case by both counsel and master, but the amount involved in a money suit should be considered in fixing allowances. *Eisler* v. *Interstate Title Examiners, Inc., 106 N. J. Eq. 88.* The record does not, in our opinion, reasonably support the *quantum* of allowances. Where chancery makes allowances which in reason either ought not to have been made (*Lincoln National Life Insurance Co.* v. *Matter, 115 N. J. Eq. 318*), or are excessive in amount (*Barr* v. *Belmar, 118 N. J. Eq. 279*), this court will make correction. The allowance for counsel will be reduced to $3,500 and that for the master to $1,500.

The decree below will be affirmed, with the designated modifications as to allowances.

*For affirmance*—PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, HETFIELD, DEAR, WELLS, WOLFSKEIL, RAFFERTY, WALKER, JJ. 12.

*For reversal*—None.